# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRISCILIANO AMADOR, GUSTAVO S. QUILES, and GLAFIRO SANCHEZ, <br><br> Plaintiffs, <br><br> v. <br><br> GUARDIAN INSTALLED SERVICES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) No. 07 C 1218 ) ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

Defendant Guardian Installed Services, Inc. ("Guardian") has moved for summary judgment on plaintiffs' amended complaint, which alleges failure to pay overtime wages at the rate of one and one-half times the regular rate of pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/4a. The amended complaint also alleges an unspecified claim under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/11(c), which simply enumerates the powers of the Department of Labor to investigate and prosecute violations of the IWPCA.[1] Guardian has also moved to strike portions of plaintiffs' response to its statement of facts as well as plaintiffs' "counter-statement" of facts. For the following

---

[1] Nevertheless, the parties treat the amended complaint as stating a claim under the IWPCA.

reasons, the motion to strike is denied, and the motion for summary judgment is granted in part.

I.

The facts in this case are mostly undisputed. Where disputed, the facts are taken from the properly pled portions of the parties' Local Rule 56.1 statements. While I deny Guardian's motion to strike, I do not consider any objected to aspect of plaintiffs' response to Guardian's statement of facts or plaintiffs' additional facts that do not comport with the local rules.

Plaintiffs Glafiro Sanchez ("Sanchez"), Prisciliano Amador ("Amador"), and Gustavo Quiles ("Quiles") worked for Guardian as insulation installers from May 23, 2005 to February 9, 2007, from August 1, 2005 to February 9, 2007, and from August 23, 2006 to February 8, 2007, respectively, at which time Guardian closed its Harvard, Illinois location. Paul Jentz ("Jentz") was the branch manager at the Harvard location.

Jentz met with plaintiffs before hiring them. Jentz told Sanchez that he would initially be paid $14.00 per hour. Sanchez received a raise to $15.00 per hour about two or three months later. Jentz told Amador that he would initially be paid $15.00 per hour and would receive overtime. Jentz also told Amador

that, as Guardian's business increased, his pay might change. According to Quiles, Jentz told Quiles that he would initially be paid $15.00 per hour and would receive overtime, but Quiles was never paid $15.00 per hour as he was hired after Guardian implemented the "piecework" program. Jentz also told Quiles that, as Guardian's business increased, his pay might change. Sanchez and Amador had been paid by the hour and by the foot by prior employers, and Quiles had been paid by the foot by prior employers.

Around December 2005 or January 2006, Joe Gruchacz, Vice President of Guardian, advised Jentz that he wanted to implement the "piecework" program for the insulation installers. Shortly thereafter, Jentz held a meeting with all of the installers, and advised them that the piecework program would likely be implemented within six months. In late April or early May 2006, Jentz informed the installers that the piecework program would be implemented and effective in June 2006. Jentz also provided each of the installers, including plaintiffs, with an example document that explained the piecework program and the method of compensation.[2] Plaintiffs state that they were never given their

---
[2]

Neither Sanchez nor Quiles recall whether the document attached to Guardian's motion as Exhibit J was the document Jentz provided at the second meeting. But Sanchez testified that the

3

wage rates in writing, but fail to provide any supporting citation to the record.

Jentz testified that "there was a packet that was given to each of them . . . we talked about the piece work program that they were going to have to move to that." He testified that the "packet" was a document that he described as "an example of the Piece Work Program." Jentz testified that he recalls reading this document to the insulation installers in English, and he did not "recall any questions at that time." He "asked if they understood, and [he] never had any questions to the contrary." Jentz further testified that he explained to the installers that this document was the same as the actual program and the only difference was that the per square footage of the labor rates for product would likely be different. Amador testified that Jentz said the dollar amounts per square foot would be different. Sanchez testified that Jentz showed them "a sheet of paper from Colorado, an example, but he told [them] that he was going to pay [them] more than that." Without any citation to the record, plaintiffs claim that there were general discussions that the way

---

document Jentz provided "said something about Colorado," and Exhibit J reflects material and labor rates for Colorado Springs, Colorado.

4

they were paid would change, but deny that the example program was read aloud.

According to plaintiffs, Jentz asked the installers to sign a paper acknowledging the change in pay. Plaintiffs did not sign the paper because they did not agree with the pay rate change. Sanchez assumed that by not signing the paper Jentz provided he would continue to be paid an hourly rate. Although Amador did not agree with the change from hourly pay to the piecework program, he understood that the way he was paid was going to change. Quiles did not ask Jentz whether he would still be paid an hourly rate if he did not agree with the piecework program, but he expected to continue to be paid an hourly rate because he did not sign the paper Jentz provided.

The insulation installers, including plaintiffs, began being paid under the piecework program on June 25, 2006. The piecework program is a commission-based system using team production footage. The team footage plan calculation is determined on a per square foot basis, based on the product installed. Pay rates are set per square foot of material installed, and they vary on the job bid and the actual product being installed. An average rate is used to determine how installers are paid for non-work events (e.g., holidays, vacation, jury duty, attendance at safety

5

meetings, drive time, and shop time).  This average rate is calculated by dividing an installer's total earnings for the previous three months by his total number of hours worked during that time period.  If an installer works more than forty hours during a given pay week, overtime pay is calculated by adding the total commission earned to any other earnings for the week (e.g. drive time, attendance at a safety meeting).  This total is then divided by the total number of hours worked that week to calculate the installer's regular rate of pay.  To determine the hourly overtime premium, the regular rate of pay is multiplied by .5.  The hourly overtime premium is then multiplied by the number of overtime hours worked to provide the total overtime premium. Plaintiffs claim that, under the foregoing description of the piecework program, if certain variables were modified (such as more drive time and less square foot of insulation), then the rate of pay would be reduced at times to below the federal and state minimum wages.  This information is not supported by any citation to the record, nor do plaintiffs contend that any such situation actually occurred.

After the piecework program was implemented, Sanchez spoke to Jentz about the manner in which his wages were calculated and his belief that he was not being fully compensated for overtime.

According to Sanchez, the number of overtime hours worked was accurately reflected on his paystub, but the pay rate was not accurate because it was not $22.50. Amador also spoke to Jentz about his belief that he was not being properly compensated because his pay was low, and he was working more hours and making less money. Amador thought Guardian should still pay him overtime at the rate of $22.50 per hour. Jentz explained how his compensation was calculated, but Amador felt Jentz was not clear. Approximately after receiving his third paycheck under the piecework program, Quiles also spoke to Jentz about his belief that he was not being properly compensated for overtime. According to Quiles, the number of overtime hours worked was accurately reflected on his paystub, but the pay rate was not accurate because it was not $22.50.

Plaintiffs accurately recorded, in their own handwriting, the hours they worked on timesheets, which they signed for accuracy. They did not work any hours that they failed to record. Sanchez and Amador are not claiming that they were not paid for overtime worked prior to the implementation of the piecework program. And plaintiffs are not claiming that they were not paid for overtime worked or that they are owed compensation for any hours other than those reflected in their

7

timesheets. Rather, plaintiffs claim they were not paid overtime at the rate of time and a half at $15.00 per hour, which is what they were paid prior to the implementation of the piecework program. Sanchez and Amador claim they worked 308.5 overtime hours for which they were not paid, and Quiles claims he worked 229.5 overtime hours for which he was not paid. Sanchez and Quiles calculated the amounts allegedly owed to them by adding the overtime hours from their paystubs. Amador calculated the amount allegedly owed to him by adding the overtime hours from June 2006 to the end of his employment.

II.

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." *See* F<small>ED</small>. R. C<small>IV</small>. P. 56(e). I must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *See Anderson*, 477 U.S. at 255.

Guardian's statement of the burdens of proof in FLSA cases, while accurate, is inapplicable here. For the burden-shifting framework set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) to apply, the defendant's time records must be either inaccurate or inadequate. *Turner v. The Saloon, Ltd.*, 491 F.Supp.2d 767, 770 (N.D. Ill. 2007). Here, neither party has made such a claim. The number of overtime hours is not at issue, but rather the rate at which compensation was paid for those hours.

### III.

Plaintiffs claim that Guardian should have paid them overtime at the rate of $22.50 per hour, as opposed to the amount paid under the piecework program. Guardian argues that it is

9

entitled to summary judgment on plaintiffs' FLSA, IMWL, and IWPCA claims because (1) Guardian compensated plaintiffs at piecework rates, which is permitted by the FLSA, IMWL, and IWPCA; (2) Guardian provided plaintiffs notice of the piecework program; and (3) none of the statutes require Guardian to have obtained plaintiffs' written authorization and agreement to be paid under the piecework program. Plaintiffs oppose summary judgment on the grounds that (1) the piecework program will inevitably cause pay to fall below the statutorily mandated minimum wage if the insulation installation work is "dwarfed by other compensable activities;" and (2) Guardian did not provide plaintiffs with rate of pay and place of payment information in writing as required under Illinois law.

I first address plaintiffs' FLSA claim. The FLSA requires that employees be compensated for overtime "at a rate not less than one and one-half times the regular rate . . . . " 29 U.S.C. § 207(a). The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," and excludes certain sums. 29 U.S.C. § 207(e).

The FLSA provides for employment "at piece rates." *See* 29 U.S.C. § 207(g). An employer does not violate § 207(a) if, "pursuant to an agreement or understanding arrived at between the

employer and the employee before performance of the work," (1) overtime pay "is computed at piece rates not less than one and one-half times the bona fide piece rates applicable to the same work when performed during nonovertime hours;" and (2) the employee's average hourly earnings for the workweek are not less than the statutorily required minimum and extra overtime is properly computed and paid on other forms of additional pay required to be included in computing the regular rate. *Id.* The Code of Federal Regulations ("Code") explains that, "[w]hen an employee is employed on a piece-rate basis," the regular rate is computed by adding all earnings for the workweek from piece rates and other sources plus sums for waiting time or other hours worked, then dividing by the number of hours worked in the week. 29 C.F.R. § 778.111(a). In addition to total weekly earnings at the regular rate, a pieceworker is entitled overtime "equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week." *Id.* The Code further states that, "Only additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked." *Id.* Guardian's piecework program tracks the

11

Code's method of calculating overtime pay and its accompanying example.

Plaintiffs have provided no factual support for their argument that the piecework program will inevitably result in pay below the minimum wage. Without any citation to the record, plaintiffs assert that it is "clear that after June 25, 2006, Defendant paid overtime rates that fluctuated and that were at times less than the statutory minimum." Plaintiffs contend that "[i]t would be very simple to show how divergent the same job would pay if it were simply located further away," but they have not adduced any facts showing that this occurred. Contrary to plaintiffs' bare assertions, they have not demonstrated that they were paid less than the statutorily required overtime wage. Thus, plaintiffs cannot withstand summary judgment on this ground.

Plaintiffs also argue that they were not provided with their "rate of pay or time and place of payment" information in writing as required by Illinois law. Plaintiffs cite no authority indicating that the failure to provide such information in writing violates the FLSA. Indeed, the FLSA requires "an agreement or understanding arrived at between the employer and employee before performance of the work." *See* 29 U.S.C. § 207(g).

The FLSA does not specify that there must be a writing of any kind, and plaintiffs cite no authority on this point.

Here, the parties agree that Guardian notified plaintiffs in advance on two occasions that it was going to implement the piecework program. The parties also agree that, before the piecework program was implemented, plaintiffs were provided with an example explaining it and the method of compensation, which was read aloud to the installers. After the piecework program took effect, plaintiffs spoke to Jentz about their belief that they were not being properly paid. Plaintiffs worked overtime hours and accepted pay under the piecework compensation structure, and continued to do so for approximately seven months from the time when the piecework program took effect until the Harvard location closed. Based on the foregoing facts, I find that Guardian's piecework program was implemented based on an agreement or understanding reached before the work was performed. Although plaintiffs may have been dissatisfied with piecework compensation, they were informed prior to performing the work that they would be compensated in this fashion.

Because I find in favor of Guardian on the FLSA claim, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over the remaining state law claims.

13

IV.

For the foregoing reasons, Guardian's motion for summary judgment is granted in part. Accordingly, judgment is entered in favor of Guardian on plaintiffs' FLSA claim, and the remaining state law claims are dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 8, 2008